## 76671. RICH v. THE STATE.
### (372 SE2d 670)

BEASLEY, Judge.

Defendant was convicted of possession of over an ounce of marijuana, OCGA § 16-13-30 (j) (1). He appeals from the denial of his motion for new trial, in which he alleged error in the denial of his motion to suppress and contested the sufficiency of the evidence.

Construed favorably to the verdict, the evidence showed that defendant operated a tavern and package store on the highway near the Tattnall County/Candler County line. He rented the building, but not the land. With permission of the landowner, rent free, he had placed a trailer, his residence, on the property adjacent to the building. The trailer's septic tank was approximately 25 feet behind it, and further behind was a sheetmetal fence blocking off the area from the adjacent pine forest. An open space in the fence allowed cars to access a circular driveway behind the tavern used for parking and turning around.

State, county and local officers, members of the Task Force on Drugs, were conducting a fly-over of Tattnall County in an effort to locate domestically grown marijuana. Just across the line, the State Patrol pilot saw two gardens of marijuana growing behind the tavern. The closest patch was 20-25 yards from the building and trailer, the second 20-25 yards behind the first. He directed the ground officers to these patches, and they pulled up the twenty or so mature marijuana

plants. Both patches appeared to have been weeded and well-tended.

At the second patch, furthest from the building, the officers located a water hose which crossed both patches and was covered with pine straw. The officers followed the hose to the tin fence behind the trailer, where it went under the fence and, still covered with pine straw, through a drain pipe and into the septic tank, where the end was coiled. Hooked to the spigot of the trailer was an uncovered hose which went to the septic tank where it lay coiled. The two ends could be joined. A path lay from the trailer to the patches.

1. There was no affidavit submitted with the motion to suppress and no evidence introduced at the hearing on it. Argument was based on the factual allegations made in the motion. The motion alleged that the area where the marijuana was found was in defendant's curtilage, i.e., "within the area normally used and occupied by the defendant." The State argued that the marijuana was in plain view, accepting the allegation that it was within the curtilage.

In considering the motion to suppress, we consider the evidence introduced at trial as the only evidence bearing on the issue. *Sanders v. State*, 235 Ga. 425, 431 (219 SE2d 768) (1975).

In addition to the facts set out above, defendant testified that he had been in the area behind the tin screen only a few times, that it was grown over with bamboo and he had no business back there. He denied any knowledge of the patches, the pathway or the hose from the septic tank to the patches. He did acknowledge that the hose attached to the spigot was his, but denied that it was kept near the septic tank. He used the hose only to control trash fires. People often parked vehicles around the tavern, sometimes overnight, and due to the tavern having only one bathroom, customers often went into the woods. He surmised that one of them planted the marijuana.

Neither in the motion nor in the hearing did defendant specify the authority upon which he relied for his contention that the police actions were unlawful. During argument to the trial court, both sides discussed the applicability of the "plain view" doctrine in the context of the Fourth Amendment. That is all we address. *Sanders v. State*, 181 Ga. App. 117, 118 (1) (351 SE2d 666) (1986).

"It is the relationship of the person with the property searched that gives rise to the protection of the Fourth Amendment. [Cit.] Here, the appellant asserted no possessory or other interest in either the [marijuana] or in the . . . property where the search was conducted. 'The Fourth Amendment right against unreasonable search and seizure is a personal right and may not be asserted vicariously. *Rakas v. Illinois*, 439 U. S. 128 (1) (99 SC 421, 58 LE2d 387). And, an individual who claims he is aggrieved by an illegal search and seizure only through the introduction of evidence secured by a search of a third person's premises has not had any of his Fourth Amendment

rights infringed. Id.'" *Todd v. State*, 184 Ga. App. 750, 751 (2) (362 SE2d 400) (1987).

Defendant contends that the patches were within the curtilage of his home, giving him standing to object to the search. But he lacked standing, so denial of the motion to suppress was not error. *Britt v. State*, 186 Ga. App. 418 (367 SE2d 298) (1988).

"Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family. [Cit.]" *Payton v. State*, 177 Ga. App. 104, 105 (338 SE2d 462) (1985).

Defendant's argument is undermined by his own words. He specifically disclaimed any right to or use of the area behind the fence. He was not renting any of the land at issue, only the tavern building. The evidence does not even indicate that the property on which the marijuana was growing was owned by the building owner. The cases relied upon by defendant all include numerous facts concerning the usage of the area not present here. E.g., *Norman v. State*, 134 Ga. App. 767 (216 SE2d 644) (1975).

2. Defendant also contends that the evidence was insufficient, relying on the fact that others had "equal access" to the area where the marijuana was growing. But the equal access rule is premised on the evidentiary presumption attributing contraband to the head of the household where it is found. *Heaton v. State*, 139 Ga. App. 83, 84 (227 SE2d 854) (1976); *Goode v. State*, 130 Ga. App. 791 (2) (204 SE2d 526) (1974). It is not applicable to growing plants because they, like other vegetation, require a period of months to grow and mature. *Fatora v. State*, 185 Ga. App. 15, 17 (1) (363 SE2d 566) (1987); *Graham v. State*, 171 Ga. App. 242, 246 (3) (319 SE2d 484) (1984); *Heaton*, supra.

Defendant lived in the trailer alone, managing his bar. The photo of the property shows no other buildings in the vicinity. The plants were taller than the officers and appeared healthy and well cared for. The carefully concealed water source and the path led to the trailer. In order to connect the water hose, the top of the septic tank had to be opened, but defendant had never seen anyone near the tank. The evidence was sufficient to allow the jury to exclude any reasonable hypothesis other than defendant's guilt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Lewis v. State*, 186 Ga. App. 349, 350 (1) (367 SE2d 123) (1988).

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED SEPTEMBER 7, 1988.

*Michael L. Chidester*, for appellant.
*Richard A. Malone, District Attorney*, for appellee.